**SCHWEERS-KERN LIVE STOCK COMMIS-SION CO. v. KOTHMANN.  (No. 6424.)**

(Court of Civil Appeals of Texas. San Antonio. June 29, 1920. Rehearing Denied Oct. 13, 1920.)

**1. Principal and agent ⬦166(2)—No ratification by retention of proceeds paid over before knowledge of alleged agent's act.**

A live stock commission house, on which an alleged agent had drawn draft in payment for plaintiff's cattle, having sold the cattle and paid the proceeds over to the drawer of the draft in settlement before receiving knowledge of the draft, was not liable on the draft.

**2. Assignments ⬦93—Debtor without notice not liable for payment.**

A live stock commission merchant, after settlement with and payment to a customer for sale of stock on commission, is not liable to pay outstanding drafts drawn against the funds or proceeds arising from the sale, in the absence of notice of any outstanding obligation, such as a draft assigning the fund.

**3. Principal and agent ⬦189(4)—No recovery on allegation of ratification of drawing of draft, on evidence showing only initial authority.**

Where recovery against a live stock commission house for the amount of a draft drawn on it by one to whom cattle were delivered by payee could not be had by the payee on allegations either of acceptance of the draft by defendant's bookkeeper, it being shown he had no such authority, or of receipt and retention of the proceeds of the cattle, no notice of the draft having been given defendant until after the proceeds of the cattle had been paid over to the drawer of the draft, no recovery could be had on the ground, not alleged, although supported by evidence, that defendant gave the draft drawer authority to draw the draft on them.

**4. Appeal and error ⬦880(3) — Rendering judgment against party not appealing does not affect judgment against appellants.**

That the judgment was rendered against a party as a member of a firm, who was in fact not a member thereof, cannot affect the judgment on appeal, where such party did not appeal therefrom.

Appeal from District Court, Bexar County; J. T. Sluder, Judge.

Action by J. W. Kothmann against the Schweers-Kern Live Stock Commission Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Henry Stieler and M. E. Buckley, both of San Antonio, for appellant.

Templeton, Brooks, Napier & Brown, of San Antonio, for appellee.

COBBS, J.  This suit was brought by appellee to recover from appellant the sum of $522, based upon the following written instrument:

. "This draft will not be honored unless given for cattle for immediate shipment to market.

---

"No. ———.

"San Antonio, Texas, October 5, 1915.

"At sight pay to the order of T. W. Enlow $522.00, five hundred twenty-two dollars, for 5 bulls, 5 cows, 5 hogs.       E. C. Evans.
"To Schweers-Kern Live Stock Commission Company, Union Stockyards, San Antonio, Texas."

On the back of the draft appear the following indorsements:

"T. W. Enlow.
"Let you know to-morrow      10—7—15.
"Return                              10—7—15.
"Pay to the order of Frost National Bank, 130 San Antonio, Texas 130.
                    "J. W. Kothmann & Co."

The grounds for recovery, as alleged in the petition, are that Enlow, appellee's agent, delivered the stock to Evans, who gave Enlow said draft in payment thereof, and the stock were shipped to appellant by Evans, who alleged the draft was good and would be paid by appellants; that appellants received the said stock, sold them, and received the money therefor; that Enlow, on receipt of the draft, immediately forwarded it to appellee, who, upon the receipt thereof, called up the office of appellants and was informed by E. R. Rothe, the bookkeeper, it was good and would be paid, and appellee thereupon deposited it in Frost National Bank for collection, which payment was thereafter refused.

It is further alleged that the cattle were turned over to appellants, relying upon the representations that said draft would be paid, and, if he had known appellants would not have honored said draft, he would not have delivered said cattle, and, if appellants had advised him on the following morning that they would not have paid the draft, he could then, and would immediately, have reclaimed said stock, as they were still in the yards in San Antonio in possession of said appellants, and relying on said representations, and believing them to be true, took no steps to take possession of said stock, but permitted defendants to sell them and receive said proceeds and retain them; That he does not know whether Evans bought said cattle for himself or appellants, but, if he bought them for appellants, they have become liable and promised to pay said amount. If he bought them for himself, they were shipped to appellants to be sold on commission, and so held when advised of the giving of the draft, and have become liable and promised to pay to appellee the said sum of $522.

---

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
224 S.W.—38

The answer contains general and special exceptions, general and special denial, and sworn plea denying agency. The case was tried before the court, jury waived, and the court filed findings of fact and conclusions of law. There is also filed a statement of facts. The court found in favor of appellee, and rendered judgment for him for the amount sued for.

W. H. Schweers, one of the appellants, testified they furnished Evans with a little pad of drafts, with the little printing on it as a protection to them, and as notice that it would not be honored unless given for cattle for immediate shipment to market, and notice to any one not to take a draft on appellant for anything else than cattle, and notice to the man dealing with him that he was not authorized to do that. Appellant got these cattle on October 5, sold them the same day, and testified that he settled with Evans that afternoon, leaving a balance due to Evans of $70 to his credit now. At that time he had no knowledge of the outstanding draft, but about two days later was told of its existence by his bookkeeper. At time of settlement with Evans they took account of all the drafts that had already come in, and Evans represented to him there were no more drafts outstanding. He generally did the "O. K.'ing" of the drafts himself. Mr. Gerdes also had the authority. Mr. Rothe was not authorized at that time.

The appellee testified that Enlow had telephoned him he had bought part of a load and was going to ship with Evans, but later telephoned he had sold to Evans, who had given him a draft therefor. Enlow drew on him for what he had paid for the stock, and called appellee over the phone, and gave him a description of those cattle in the car, then ready to be shipped, which he paid draft for. The stock were all shipped that night, and he saw the stock the next morning in the possession of appellants, which he identified by the description as phoned him by Enlow; likewise those described in the Enlow drafts which he had previously paid. The draft drawn by Evans, sued on, had not then been received. It was received that evening. When the draft was received, Mr. Schweers was not in town. The draft is supposed to have come at the noon hour, but the letter containing it did not go to his office, but was delivered at his residence. The cattle had all been sold then.

Appellants and appellees are competitors in the same business, having adjoining rooms in same building. This draft did not come to his office, but to his residence, and he actually received it about 4 or 5 o'clock that evening. He did not notify appellants that draft was coming, but after it came telephoned from his house to appellants' office, and said to Mr. Rothe, "I have a draft," and told him what it was, and asked if it was good, and he said it was all right and would be paid. It was later than 4 when this telephoning occurred. He deposited draft in Frost National Bank next day. He knew that Mr. Rothe was not signing checks, but Rothe called it good. Rothe denied the statement that appellee notified him, and further stated:

The offices of appellants and appellee are adjoining. "When I have any communication to make to Kothmann's firm I go around to the office, and when they have any business to do with us, they come into our room."

[1] The first alleged ground for recovery is that Evans represented the draft would be paid, and the stock were shipped to and received by appellants, who received and sold them, and were bound to pay because of said representations, and further because Rothe, the bookkeeper, said the draft was good and would be paid. If the cause of action is dependent upon what Rothe told him, then the undisputed evidence shows at the alleged time of notice the stock had been sold, and it was not shown that the proceeds had not been paid over to Evans, and the cattle no longer in appellants' possession, and Schweers did not know of the draft until several days had passed. There is no fact or circumstance alleged or claimed that binds the appellants by virtue of any act or the conduct on the part of Rothe, for the testimony and finding of the court fails to show how appellants could be bound by his statement, since it is shown he had no authority to O. K. drafts, as appellee himself well knew, and also knew that only Schweers signed his drafts, and besides appellee did not communicate with Rothe until he received the draft, which was after the sale of the cattle, and after some kind of a settlement had been made with Evans. The appellee used no diligence whatever to give notice. He was advised the evening of the day before of the draft by Enlow, the cattle would be shipped, and that the draft was drawn. Having an adjoining office, he made no inquiry there, but made investigation in the stockyards the next morning, to ascertain if the stock had arrived, and he saw all the stock in the pens; still he let nearly the entire day pass, and permitted appellants to sell the stock, secure proceeds, and settle with Evans, and permit him to go away, without notifying them. Then, late that evening, he called over the phone from his residence and advised Rothe of the draft, deposited it in a bank for collection, leaving appellants in ignorance thereof until presented to them by the bank for payment several days thereafter. We cannot sustain the recovery on that ground.

The next ground for recovery is that, if he bought said cattle for appellant company, then appellant is liable. This allegation is not attempted to be sustained by any proof offered by appellee.

[2] The third ground is that, if appellee purchased said cattle to be sold on commission by appellant, then appellant is liable. Taking that allegation to be true for the sake of the argument, upon what theory would that make appellant liable to pay such a draft, if presented for payment after the settlement had been made between them? We take it that no commission merchant, after a settlement with and payment to a' customer, is liable to pay outstanding drafts drawn against the funds or proceeds arising from a sale of stock, in the absence of some kind of notice of some outstanding obligation, such as' a draft assigning the fund. Here the evidence shows that the alleged commission merchant had received from his customer the stock consigned to them, and sold and settled for with him, before there is any notice whatever brought to the merchant of any draft or claim against the fund. Even conceding that notice could be had on appellant's bookkeeper to bind, this notice is confessedly given after appellant had sold the stock and accounted for the proceeds with his alleged customer, Evans, who drew the draft. There was nothing to prevent the settlement. Here was the shipper demanding payment. Appellant had the stock in hand. There was no notice of any outstanding claim. The court did not find that, when appellant learned of the existence of the draft, he had funds in his possession owing to Evans out of which he could pay the draft.

[3] The trial judge did not base his judgment upon any matters alleged in the pleading. He found that Rothe had no authority to accept the draft, and the proof sustains him on that, but puts the recovery on the ground that appellants authorized Evans to draw the draft on them. This is a very important finding or conclusion, but the recovery, as shown in appellee's pleading, does not put it on that ground. It is nowhere alleged that Evans was supplied with a batch of drafts and authorized to purchase cattle and give the owner the draft as payment for the purchase price. It is nowhere alleged that there was any agreement that the draft given by Evans on Schweers-Kern Live Stock Commission Company would be paid, nor that Evans was authorized by them to give the draft for the stock. It is alleged that Evans-said it would be paid, but it is not alleged that appellants authorized him to make such representation, nor is any representation by Evans proven. Appellee alleged the bookkeeper said it was good and would be paid; but at that time stock had been sold and Evans settled with. He does allege that, if he had been advised in time, he. would have secured the stock. He does allege, if Evans bought them for appellants, they would be liable. Lastly, he alleges that, if Evans bought them for himself, to be sold by appellants as commission merchants, they would be liable, but nowhere seeks to recover upon any allegation to the effect that Evans was their agent, purchasing stock for them, and had authority to, bind them to pay his draft, or the statement of such facts and circumstances as to create the relation, which authorized him to bind the appellants to pay drafts drawn on them in payment of stock purchased for their account. It is immaterial that neither Enlow' nor appellee got any part of the proceeds, since appellant paid all over to Evans, except $70 retained. The question is: Did they lawfully pay the same over to Evans without notice, so as to protect appellants, in the light of the pleading and evidence?

[4] The thirty-fourth assignment complains of the judgment including E. E. Kern therein, sued as a member of the firm, but who was not in fact a member thereof, and for that reason it is claimed there could be no judgment against him. As Kern has not appealed, that will in no wise affect the judgment against any of them, certainly not against him. West Furniture Co. v. Cason, 218 S. W. 774; Bowman v. Saigling, 111 S. W. 1082.

Although the findings of the court are supported by the evidence, we regard them as establishing a different case from that pleaded, and therefore conclude that the judgment must be reversed, and the cause remanded.